IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

D.J.H., )
 )
        Plaintiff, )
 )
v. ) 1:22CV333
 )
KILOLO KIJAKAZI, )
Acting Commissioner of Social Security, )
 )
        Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

    Plaintiff D.J.H. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

    Plaintiff protectively filed an application for DIB on February 2, 2020, alleging a disability onset date of October 28, 2019. (Tr. at 112, 320-21.)[1] Plaintiff's application was denied initially (Tr. at 219-29, 243-51) and upon reconsideration (Tr. at 230-41, 255-58). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 259-60.) On March 10, 2021, Plaintiff, along with his attorneys

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

and interpreters, attended the subsequent telephonic hearing, at which Plaintiff, a witness, and an impartial vocational expert testified. (Tr. at 112, 197.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 121-22), and on March 3, 2022, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 2-8).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date of October 28, 2019. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 115.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> osteoarthrosis and allied disorders; dysfunction of the major joints; disorders of muscle, ligament[,] and fascia; and hyperlipidemia[.]

(Tr. at 115.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 115.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following, additional limitations:

> [Plaintiff] was unable to climb ladders, ropes or scaffolds, or crawl; [Plaintiff] could frequently balance, stoop, kneel and crouch; he could perform no more than frequent lifting overhead bilaterally, and he could frequently reach and handle with either upper extremity; he could occasionally climb ramps or stairs; he should avoid concentrated exposure to wetness, humidity, vibration, fumes, odors, dust, gases and poor ventilation; he should avoid all exposure to workplace hazards, such as unprotected heights or dangerous machinery.

(Tr. at 115-16.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of his past relevant work. (Tr. at 120.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 120-21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 121-22.)

Plaintiff now contends that the ALJ "fail[ed] to consider and reconcile all the contradictory probative evidence, including medical opinion evidence, prior to reaching her RFC conclusions." (Pl.'s Br. [Doc. #11] at 5-6.) Specifically, Plaintiff argues that the ALJ failed to perform a function-by-function assessment of relevant and contested limitations as required by Social Security Ruling 96-8p ("SSR 96-8p") and Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). As SSR 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotation omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478. An ALJ must "both identify

6

evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal brackets, emphases, and quotation omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). Meaningful review is frustrated, and remand is necessary, if the court is "unable to fathom the ALJ's rationale in relation to evidence in the record." Cichocki, 729 F.3d at 177 (internal quotation omitted). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

In the present case, Plaintiff contends that the ALJ failed to properly explain the basis for her findings that Plaintiff could (1) frequently lift overhead and reach with his upper extremities despite limited use of his left shoulder, and (2) perform light work with postural limitations despite ongoing right knee complaints. Notably, Plaintiff's shoulder and knee

7

impairments stem from an accident in which he was struck by a car as a pedestrian on October 28, 2019, resulting in multiple injuries and necessitating surgery on both his left shoulder and right leg. (Tr. at 117.) As recounted in the administrative decision, Plaintiff's tibial plateau fracture was surgically repaired in multiple surgeries from October to December 2019, and he underwent shoulder surgery in May 2020 for left subacromial bursectomy with acriomioplasty, left shoulder arthroscopic supraspinatus tendon repair, and left shoulder biceps tenodesis. (Tr. 117-18.) Plaintiff contends that ALJ's findings regarding his resulting limitations, particularly the findings regarding the medical opinions, fail to consider all of the relevant evidence, fail to adequately explain the ALJ's analysis, and fail to provide substantial evidence to support the ALJ's conclusions.

With respect to the opinion evidence, under the applicable regulations for claims filed on or after March 27, 2017,

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .
>
> . . . .
>
> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

8

> (3) <u>Relationship with the claimant.</u> . . . [which includes:] (i) Length of the treatment relationship. . . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . . [and] (v) Examining relationship. . . .
>
> (4) <u>Specialization</u>. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) <u>Other factors.</u> . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a), (c). The regulations also require decision-makers to articulate in their decisions "how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2).

Here, the ALJ evaluated opinions relating to Plaintiff's shoulder impairment from multiple providers, including Plaintiff's treating physicians, Dr. Kevin Coates (Plaintiff's shoulder surgeon) and Dr. Jason Halvorson (Plaintiff's leg surgeon). (Tr. at 119-20.) Dr. Halvorson, in a January 5, 2021 letter, opined that Plaintiff was still unable to do light work, but "can do sedentary work – desk type work until pending further eval[uation] by Dr. Coates." (Tr. at 867.) Dr. Kevin Coates, in a January 5, 2021 letter, opined that Plaintiff was

9

not capable of light work and was only capable of sedentary work and could lift no more than five pounds. (Tr. at 876-77.) Notably, the ALJ failed to recount Dr. Coates' opinion in her decision at all. Although the ALJ mentioned that such an opinion existed, she trailed off mid-sentence without describing it:

> Jason Halvorson, M.D., opined on December 1, 2020 that the claimant could likely do sedentary work from a knee standpoint (Exhibit 5F). **Kevin Coates, M.D., opined on January 6, 2021 that the claimant could** Their opinions are not persuasive because they are not supported with any specific citations to the record. Furthermore, the recent evidence is inconsistent with a sedentary residual functional capacity.

(Tr. at 119 (emphasis added).) Thus, the opinion from Dr. Coates was not actually set out in the ALJ's decision, and the discussion appears to be incomplete. Even more importantly, in apparently rejecting Dr. Coates' opinion, the ALJ found that the opinion was unpersuasive because it was "not supported with any specific citations to the record" and was inconsistent with "recent evidence" suggesting that Plaintiff was capable of more than sedentary work. (Tr. at 119.) Specifically, with regard to Plaintiff's shoulder, the ALJ provided the following rationale:

> Examiners stated on June 4, 2020 that [Plaintiff] was doing well following shoulder surgery, and he was no longer taking pain medication. Additionally, providers noted on August 14, 2020 that [Plaintiff] could raise his left upper extremity farther. [Plaintiff] presented in no acute distress. He was unaccompanied to [the] exam, and he did not wear a left shoulder sling. Furthermore, left shoulder adjusted range of motion was at 90 degrees elevation.

(Tr. at 119.) However, as Plaintiff correctly asserts, "[i]t is notable that the ALJ concludes that 'recent evidence' is inconsistent with Dr. Coates' opinion but only cites to evidence that pre-dates his opinion." (Pl.'s Br. at 11-12.) In fact, as Plaintiff notes, the ALJ failed to consider Dr. Coates' treatment notes from August 2020 and November 2020, and failed to consider

10

any of the physical therapy notes from that period. As noted by Plaintiff, Dr. Coates' August 2020 treatment notes indicated that if Plaintiff did not improve with his left shoulder range of motion he would need to plan for a medical manipulation of the left shoulder under anesthesia, and Dr. Coates provided Plaintiff with an injection to help with pain and range of motion. (Pl.'s Br. at 12) (citing Tr. at 1080). Subsequent physical therapy notes reflect ongoing difficulties even after the injection, and physical therapy treatment notes from November 2020 reflect that Plaintiff had not met goals of increasing left "shoulder strength to grossly 4+/5 to promote ability to lift and reach overhead" or his goal of reduced pain with activities of daily living as measured by the QuickDASH assessment. (Pl.'s Br. at 12, 16) (citing Tr. at 841, 1150, 1173, 1241, 1261-62, 1320-21). Similarly, the ALJ fails to address Dr. Coates' "exam findings from November 2020 which included findings of weakness, limited range of motion due to pain, positive findings on testing and a report from the claimant of difficulty with carrying and even 'putting on a heavy jacket.'" (Pl.'s Br. at 12) (citing Tr. at 1272-74). Indeed, as Plaintiff further notes, "although Exhibit 7F covers 496 pages of the administrative record and spans from August 8, 2020-December 2020 the ALJ's decision contains no reference to evidence from this Exhibit." (Pl.'s Br. at 14.)

In considering Plaintiff's contentions, the Court notes that the ALJ rejected the treating surgeon opinions from January 2021 based on the ALJ's assessment of the "recent evidence," but the evidence relied on by the ALJ stopped on August 14, 2020, and the ALJ did not consider the more recent treatment records from August 2020 to December 2020 set out in Exhibit 7F. These records were submitted after the hearing, but counsel for Plaintiff requested

11

permission for the submission accompanied by a showing of good cause (Tr. at 427), and the ALJ's decision notes that:

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge finds that the requirements of 20 CFR 404.935(b) are satisfied and admits this evidence into the record.

(Tr. at 112.) However, that ALJ then made an inconsistent statement about the same submission:

> An exhibit from Wake Forest University medical center was submitted to the record on March 25, 2021. The undersigned does not admit this evidence to the record because the evidence is duplicative of other exhibited files.

(Tr. at 113.) (See also Tr. at 126, 427, 878, 1373.) Thus, the ALJ's decision specifically reflects that she did not consider Exhibit 7F, even though the requirements of 20 CFR § 404.935(b) were satisfied, because the ALJ viewed it as "duplicative." Notably, however, the records from Wake Forest University submitted on March 25, 2021 were not, in fact, duplicative of the other files in the record, and instead contained five months of treatment records including physical therapy records and examinations by the treating surgeons, none of which were considered or analyzed by the ALJ. It is not the role of this Court to undertake the initial review of these medical records, and the lack of any review by the ALJ means that the Court cannot follow the ALJ's rationale or reasoning. In addition, as noted above, the key to evaluating opinion evidence is supportability and consistency with the record, but here the ALJ did not consider or address all of the medical records, including Dr. Coates' two examinations, prior to providing his opinion. Thus, the ALJ's failure to consider and discuss several months' worth of later, relevant medical findings undermines her analysis of the

12

supportability and consistency of the treating surgeons' opinion evidence and renders the ALJ's evaluation of this opinion evidence unsupported by substantial evidence.

In addition, Plaintiff also notes a lack of substantial evidence in the ALJ's analysis of the state agency medical consultants' opinions at the initial and reconsideration levels, Drs. Melvin Clayton and Dakota Cox. In pertinent part, Drs. Clayton and Cox both opined that Plaintiff was capable of occasional overhead reaching with his left upper extremity. (Tr. at 119, 225, 236.) Although the ALJ found that consultants' opinions were "well supported with ample citations to the record" and "consistent with recent evidence which shows improving function," she also noted that Plaintiff "treats his discomfort with over-the-counter medications," and that, as of August 14, 2020, the "adjusted range of motion [for Plaintiff's left shoulder] was at 90 degrees elevation." (Tr. at 119-20). As Plaintiff correctly notes, the ALJ repeatedly relies on Plaintiff's purported ability to "raise his left upper extremity farther" and his 90-degree range of elevation as substantial evidence that Plaintiff could perform frequent overhead reaching with his left arm. However, these findings are vague regarding the extent of Plaintiff's reaching ability. Neither the records or the ALJ define "farther," nor do they explain whether 90 degrees of elevation is sufficient to perform overhead reaching. Moreover, the ALJ failed to discuss or address how these records would support Plaintiff's ability to frequently reach overhead bilaterally for several hours a day, up to 2/3 of the workday. The only opinion evidence relating to the <u>amount of time</u> Plaintiff can perform this activity during the course of a workday is that of the State agency medical consultants. As set out above, both consultants opined that Plaintiff could perform no more than <u>occasional</u> overhead reaching with his left arm. (Tr. at 119, 225, 236.)

Notably, evaluation of this issue is further complicated by inconsistencies in the Vocational Expert testimony and the framing of the hypothetical to the VE. At the hearing, the hypothetical question that the ALJ posed to the Vocational Expert included the limitation to occasional overhead reaching on the left, as opined by the state agency medical consultants:

> [A]ssume this individual is limited to medium work. The individual cannot push or pull constantly with the left upper extremity; can reach overhead with the left upper extremity <u>occasionally</u>. . . .
>
> . . . .
>
> Assume the same factors I provided in the first hypothetical, however, the individual is limited to light work. Would there be any jobs that could be performed?

(Tr. at 212-13 (emphasis added).) The VE identified the positions of Mail Clerk (DOT 209.687-026), Marker (DOT 209.587-034), and Small Product Assembler (DOT 706.684-022). (Tr. at 213.) However, the Dictionary of Occupational Titles ("DOT") indicates that each of these jobs requires <u>frequent</u> reaching in all directions. <u>See</u> DOT 209-687-026, 1991 WL 671813; DOT 209.587-034, 1991 WL 671802; DOT 706.684-022, 1991 WL 679050. The ALJ apparently recognized this inconsistency after the hearing and sent a follow-up interrogatory to the VE, stating:

> Please note, <u>in previous testimony during the hearing in this case, in response to the same residual functional capacity listed in item 7 below</u>, you indicated [] the positions listed below. However, in consulting available vocational assessment tools, however, the undersigned has discovered that these positions are described in the Dictionary of Occupational Titles as requiring constant or frequent reaching. Please ensure that your response to the below interrogatory fully addresses these seeming inconsistencies or provide other jobs that meet the parameters.

(Tr. at 435 (emphasis added).) However, in item 7 rather than repeating the prior hypothetical from the hearing, the ALJ set out the following hypothetical:

14

> [T]his individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he was unable to climb ladders, ropes, or scaffolds or crawl. He could frequently balance, stoop, kneel and crouch. He could perform <u>no more than frequent lifting overhead bilaterally, and he could frequently reach and handle with either upper extremity</u>. He could occasionally climb ramps or stairs. He should avoid concentrated exposure to wetness, humidity, vibration, fumes, odors, dust, gases, and poor ventilation. He should avoid all exposure to workplace hazards, such as unprotected heights or dangerous machinery.

(Tr. at 438 (emphasis added).) In response to this interrogatory, the VE again identified the same Mail Clerk and Marker positions, and also identified Housekeeping Cleaner (DOT 323.687-014), which also requires frequent reaching. See DOT, 323.687-014, 1991 WL 672783. It is not clear from the record why the hypothetical changed in Item 7 of the interrogatory, and in particular why the limitation to no constant pushing and pulling with the <u>left</u> upper extremity and only <u>occasional</u> reaching overhead with the <u>left</u> overhead extremity was replaced with <u>frequent</u> lifting and reaching <u>bilaterally</u>. In any event, the opinions of the state agency physicians included a limitation to only <u>occasional</u> overhead reaching with the left upper extremity, but an RFC limitation to occasional, rather than frequent, overhead reaching would preclude all three jobs identified by the ALJ at step five of the sequential analysis.[4]

Ultimately, substantial evidence fails to support that ALJ's evaluation of the state agency consultants' opinions, particularly as to the determination that Plaintiff could perform overhead reaching with his left upper extremity frequently rather than occasionally as opined by the State agency physicians. In setting the RFC, the ALJ found Plaintiff more capable than

---

[4] The ALJ did not include alternative findings to render this issue harmless, and it is beyond the scope of this Court's review to review the missing evidence, fashion an alternative RFC, and then rely on VE testimony not relied on by the ALJ to conclude that other alternative jobs would be available.

15

opined by any medical provider or reviewer, the ALJ failed to consider several months' worth of recent medical evidence, and the ALJ failed to provide sufficient evidence supporting the conclusion or build an "accurate and logical bridge" connecting the evidence to the RFC assessment. As a result, remand is required in the present case.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further consideration of Plaintiff's claim in light of the above recommendation. Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #10] should be GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, his Motion is DENIED.

This, the 30th day of August, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge